IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ANDREA LANCASTER and
WILLIAM LANCASTER,

     Plaintiff,

     vs.                                 No. CV  20-1156 KG/LF

GOODMAN REAL ESTATE, INC. d/b/a
THE TOWERS APARTMENTS, and
SCHINDLER ELEVATOR CORPORATION,

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

     Both Defendant Goodman Real Estate, Inc., d/b/a The Towers Apartments ("Triad

Towers")[1] and Defendant Schindler Elevator Corporation seek summary judgment[2] on Plaintiffs

Andrea and William Lancaster's negligence claims against them.  The Motion is fully briefed.[3]

After considering the parties' briefing, the record of the case, and the applicable law, the Court

will deny the motions.

---

[1] Defendant Goodman Real Estate, Inc. d/b/a/ The Towers Apartments asserts that it is "improperly designated as Goodman Real Estate, Inc." and it that its proper name is "Triad Towers, d/b/a The Towers Apartments." *See* Doc. 42.  It refers to itself as Triad Towers throughout its Motion, and accordingly, the Court will too.

[2] *See* Goodman Real Estate, Inc., d/b/a/ The Towers Apartments ("Triad Towers") Motion for Summary Judgment (Doc. 42); Schindler Elevator Corporation's Motion for Summary Judgment (Doc. 43).

[3] *See* Response in Objection to Goodman Real Estate, Inc. d/b/a/ The Towers Apartments ("Triad Towers") Motion for Summary Judgment (Doc. 45); Response in Objection to Schindler Elevator Corporation's Motion for Summary Judgment (Doc. 46); Reply in Support of Schindler Elevator Corporation's Motion for Summary Judgment (Doc. 43) (Doc. 49); Goodman Real Estate, Inc. d/b/a The Tower's Apartments' ("Triad Towers") Reply for its Motion for Summary Judgment) (Doc. 51).

I. Procedural History and Facts

    A. Complaint

    On July 28, 2020, Plaintiffs filed a Complaint against Defendants with the Second Judicial District Court, in Bernalillo County, New Mexico.  On November 6, 2020, Defendants removed the case to federal court based on diversity under 28 U.S.C. § 1332(a).  Doc. 1.

    The Complaint alleges that Defendants were negligent in the operation and maintenance of Elevator 2B, which is located in the Tower Apartments where Plaintiffs reside.  Plaintiffs allege that on August 22, 2017, Elevator 2B malfunctioned while Plaintiff Ms. Lancaster was in the elevator and caused injury to her ("incident").  Plaintiffs allege that Defendant Tri Towers breached its duty to them because "they knew or should have known that the elevator malfunctions created a dangerous condition," "failed to take reasonable care to inspect their premises and to take actions to protect their residents" and "ignored resident complaints and unsatisfactory elevator inspections" and failed to warn of the "dangerous conditions caused by the malfunctioning elevator."  Doc. 1-1 ¶¶ 9-11.  Defendant Schindler maintained the elevators at the Towers Apartments and, according to Plaintiffs' Compliant, breached their duty to Plaintiffs "to properly and safely maintain the elevator, or to properly warn the Plaintiff, other residents and visitors to the premises of the dangerous condition caused by the malfunctioning elevator, of which it would have had specific knowledge had it performed the duty of reasonable inspection." *Id.* ¶¶ 12-14.

    B. Undisputed Facts

    Facts set forth in Defendants' Motion that are not specifically controverted by Plaintiffs are deemed undisputed.  *See* D. N.M. LR-CIV 56.1(b).  The following facts are undisputed or where disputed are presented in the light most favorable to Plaintiffs.

Ms. Lancaster lived on the sixth floor of the Tower Apartments.  Doc. 42 at 2 ¶ 1; Doc. 43 at 2 ¶ 1.  Two elevators serviced the sixth floor, Elevator A and Elevator 2B.  On August 22, 2017, Ms. Lancaster pushed a button to call an elevator to the sixth floor.  Doc. 43 at 2 ¶¶ 2, 3.

When Elevator 2B arrived, Ms. Lancaster entered the elevator and pushed the button for the first floor.  Doc. 43 at 2 ¶ 3.  Ms. Lancaster testified that the elevator began to descend, then bounced and came to an abrupt stop.  Then, Ms. Lancaster states that she felt the elevator fall. She estimates that the elevator fell almost three floors.  Again, the elevator bounced up and down, then came to another abrupt stop which caused Ms. Lancaster to fall to the floor of the elevator.  Doc. 42 at 3 ¶ 3; Doc. 43 at 2-3 ¶ 4, 5.

When Elevator 2B arrived at the first floor, the lights were off in the elevator.  Ms. Lancaster began to pound on the door of Elevator 2B.  Subsequently, the doors to Elevator 2B opened and Ms. Lancaster saw a man outside the door waiting for the elevator.  The man held a bottle of champagne and a bouquet of flowers.  He greeted her and helped her get to her feet. The man convinced Ms. Lancaster to reenter the elevator and return to the sixth floor, which she did.  Doc. 42 at 3 ¶ 4; Doc. 43 at 3 ¶¶ 6-8.  Ms. Lancaster reported the incident.

Triad Towers contracted with Schindler Elevator Corporation to provided preventative maintenance for the elevator equipment at 5404 Montgomery NE, which included Elevator 2B. After Ms. Lancaster reported the incident, the elevator was turned off and inspected by a technician employed by Schindler.  Doc. 42 at 3 ¶ 5.  When Schindler did not find any malfunctions, it returned Elevator 2B to service the following day, at approximately 11:58 AM.

Elevator 2B is an automatic electric hydraulic elevator manufactured by EXCO Elevator Corporation and was installed in 1973.  It services seven landings, operates at 150 feet per minute, and has automatic power operated doors.  A hydraulic elevator uses hydraulic fluid, an

electric motor with a hydraulic pump, and a cylinder to raise and lower the elevator.  Doc. 45 at 16 ¶ 2.1. Doc. 43 at 8 ¶ 8.

Generally, the serviceable lifespan of an elevator is 20-25 years.  At the time of the alleged incident, Elevator 2B was 44 years old.  Doc. 43 at 42; Doc. 45 at 25 ¶ 4.3.

## II.  Legal Standard

"[I]n a federal diversity action, the district court applies state substantive law—those rights and remedies that bear upon the outcome of the suit—and federal procedural law—the processes or modes for enforcing those substantive rights and remedies." *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018).  This means that when considering a summary judgment motion a federal judge "will look to [state law] to determine what elements the plaintiffs must prove at trial to prevail on their claims" but "exclusively to federal law to determine whether plaintiffs have provided enough evidence on each of those elements to withstand summary judgment." *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1129 (10th Cir. 2009) (internal citations omitted).  The Complaint alleges the tort of negligence based on an incident that occurred in New Mexico, so New Mexico state law applies.

A court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995) (quotation omitted).  When applying this standard, the Court examines the factual record and reasonable inferences in the light most favorable to the party opposing summary judgment. *Applied*

*Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  "Once the moving party has met its burden, the burden shifts back to the nonmoving party to show that there is a genuine issue of material fact." *Jensen v. Kimble*, 1 F.3d 1073, 1077 (10th Cir. 1993) (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)).  Disputes are genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and they are material "if under the substantive law it is essential to the proper disposition of the claim."  *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (further citation and internal quotation marks omitted).

III.     Discussion

A. Expert Reports

In New Mexico, a negligence claim requires a plaintiff to show four elements:  (1) duty, (2) breach, (3) causation, and (4) damages.  *Zamora v. St. Vincent Hosp.*, 335 P.3d 1243, 1249 (N.M. 2014).  Defendants' Motion focuses on the third element, causation.  Both parties retained experts and filed expert reports opining about what caused the alleged incident.  Plaintiffs' expert, Joseph L. Stabler, President of Stabler Associates, Inc., completed and submitted an expert report on September 1, 2021 ("Stabler Report").  Defendants' expert, Jon B. Halpern of Jon B. Halpern and Associates, submitted his expert report on October 15, 2021 ("Halpern Report").  Currently, neither party questions the qualifications of the opposing expert.

The Stabler Report identifies the incident as a "misleveling incident."  Doc. 45 at 27 ¶ 6.2.  As defined in the Stabler Report, the term "leveling" when used in reference to the operation of an elevator is defined as "'controlled car movement toward the landing, within the leveling zone, by means of a leveling device, which vertically aligns the car platform sill relative to the hoistway landing sill to attain a predetermined accuracy."  *Id.* at 3.5.  An interlock system

in Elevator 2B "prevent[s] the elevator from operating until all of the hoistway doors are closed

and locked." *Id.* Shorting bars bridge the "electrical contacts" in the interlock system and

"complete an electrical safety circuit in the elevator controller to permit the elevator to operate."

*Id.* Prior to the incident in June 2017, Defendant Schindler Elevator discovered a cracked

shorting bar in Elevator 2B. The following month, they cleaned it but did not replace it.

Focusing on the cracked shorting bar, The Stabler Report hypothesizes that it caused the elevator

incident because "failure to complete the hoistway shorting door safety circuit properly will

cause the elevator to malfunction and stop without notice or warning to passengers."

Alternatively, the Stabler Report suggests that "[s]uch an event can also occur if the elevator

power door operator is worn and out of adjustment and the car doors do not fully close and the

mechanical car door clutch 'clops' or 'strikes' the hoistway door unlocking rollers as the elevator

operates." Doc. 43 § 2.3 The Stabler Report concludes:

> The subject elevator, which should have been in safe and proper operating
> conditions, failed to operate safely and properly on August 22, 2017[,] due to
> Defendants['] failure to ensure safe and proper operating conditions, as mentioned
> herein. Further this type of incident would not ordinarily occur absent the failure
> of those persons responsible to care for, adjust, maintain, service, or upgrade the
> elevator, as a reasonably prudent person, exercising good judgment and common
> sense, would comply with the state codes for elevators and similar conveyances.

*Id.* ¶ 6.16.

In contrast, the Halpern Report concentrates on Ms. Lancaster's description of the event,

singling out her statement that the elevator fell three floors. The Halpern Report explains that

the incident could not have occurred as she described:

> Without a catastrophic failure of the high-pressure hydraulic system the elevator
> cannot overspeed, drop or fall. The fact that the elevator stopped level with the
> first-floor landing immediately following the alleged incident and then ran back
> up to the 6th floor landing with the plaintiff and an unidentified gentleman is a

sure indicator that there was no catastrophic failure of the high-pressure
hydraulics.

Doc. 43 at 40.  The Halpern Report dismisses the Stabler's Report's interlock theory stating, "the

clipping of an interlock, or the application of an electrical protective device could not cause the

type of stop described herein by the plaintiff." *Id.* at 41.  Finally, the Halpern Report theorizes

that if an accident happened at all, the fact that the lights went out in the elevator suggests that

there was a power outage in the building. *Id.* at 46 ¶¶ 15-16.

    B.  Parties' Arguments

    Relying on the Halpern Report, Defendants[4] assert that because only a failure of the

hydraulic system could have caused the elevator to fall three floors, and the hydraulic system did

not fail, the incident described by Ms. Lancaster could not have occurred.  Defendants further

argue that the Stabler Report "fails to indicate what caused the elevator to allegedly fail, fails to

identify the specific component that failed, and fails to identify what maintenance or repairs that

would have prevented the incident." Doc. 43 at 8.  Defendants conclude that Plaintiffs have not

established that any incident occurred because of Defendants' negligence.

    Plaintiffs counter that there is a genuine dispute about causation because the Stabler

Report does present a theory about what caused the elevator incident, a failure of the interlock

system due to a cracked shorting bar, and/or an out-of-adjustment operating door.  Doc. 45 at 6-

7.  They assert further that Defendants' argument presumes that "it's expert's view of what

---

[4] Both Defendants Triad Towers and Schindler Elevator Corp, rely on the Halpern Report, and their Motions make
similar arguments. In its reply, Defendant Triad Towers also joins and incorporates Defendant Schindler Elevator
Corp.'s Motion. Doc. 51 at 1. For that reason, the Court will address the Defendants' arguments jointly.

happened should prevail." Doc. 46 at 7. To their Response, Plaintiffs attach a Supplemental

Affidavit by Mr. Stabler further explaining his theories. Doc. 46. Alternatively, Plaintiffs argue

that the Stabler Report "strongly supports the inference of res ipsa loquitur: that the elevator

malfunction could only be due to Defendants' well documented negligence." Doc. 45 at 1.

    C. Analysis

    In a negligence claim, the causation element focuses on "whether and to what extent the

defendant's conduct foreseeably and substantially caused the specific injury that actually

occurred." *Herrera v. Quality Pontiac*, 73 P.3d 181, 186 (N.M. 2003). Generally, proximate

cause is "a question of fact for the jury." *Id.* But sometimes summary judgment may be

appropriate on the issue of proximate cause. "A court may decide questions of negligence and

proximate cause, if no facts are presented that could allow a reasonable jury to find proximate

cause." *Spencer v. Health Force, Inc.*, 107 P.3d 504, 511 (2005) (quoting *Calkins v. Cox Ests.*,

792 P.2d 36, 42 n.6). In that situation, the court must conclude "that no reasonable jury could

decide the breach of duty or legal cause questions except one way." *Rodriguez v. De Sol*

*Shopping Ctr. Assocs., L.P.,* 326 P.3d 465, 474 (N.M. 2014).

    Both parties have presented competing opinions about what did or did not occur on

August 22, 2017. These expert opinions dispute material issues of fact. Nonetheless,

Defendants assert that the Court should discount Plaintiffs' expert opinions, arguing that they

were not in the Stabler Report. According to Defendants, the Supplemental Affidavit includes

three "new" or "changed" opinions: (1) that a cracked shorting bar may have caused the incident;

(2) that a cracked shorting bar may cause abrupt stops that create a perception that the elevator

has dropped; and (3) that loose wiring or a blown fuse may have caused the lights of the elevator

to fail. Based on their assertion that the Supplemental Affidavit proffers new opinions,

Defendants ask the Court to disregard it.  The Court disagrees with Defendants that the opinions in the Supplemental Affidavit are new.

The first two opinions Defendants classifies as "new" appear in paragraph 2.3 of the Stabler Report.[5]  Doc. 45 at 16 ¶ 2.3.  In explicit detail, Paragraph 2.3 specifies that a failure in the shorting bar in the interlock system will "cause the elevator to malfunction and stop without notice and warning to passengers."  *Id.*  While the Supplemental Affidavit expands on the latter part of the sentence with its observation that "elevator passengers often perceive abrupt movements in an elevator as dropping," that addition does not present new information, but elucidates that a passenger's perception of a fall does not mean that there was a fall.  Neither opinion is new, nor do these statements in the Supplemental Affidavit change the factual basis for the opinions expressed in paragraph 2.3 of the Stabler Report.

Targeting the language of paragraph 2.3, Defendants also assert that Plaintiffs' word choice demonstrates that Plaintiffs are not opining about what caused the malfunction but are guessing about what "*could* have" caused the malfunction. Doc. 51 at 10 (emphasis in the original).  Defendants contend that "[s]peculation and conjecture do not equate to admissible

---

[5] Mr. Stabler states:

> The interlocks are also wired in series such that when one interlock is opened, the safety circuit is opened[,] and power is removed from the elevator.  In accordance with the aforementioned elevator service records, Schindler determined that the shorting bar for the 7th floor interlock was cracked on June 12, 2017 and then cleaned the shorting bar on July 24, 2017; however, there is no evidence that Schindler replaced the defective shorting bar before Ms. Lancaster's incident. As previously mentioned, the shorting bar bridges the electrical contacts in the interlock, and failure to complete the hoistway door safety circuit properly will cause the elevator to malfunction and stop without notice or warning to passengers. Such an event can also occur if the elevator power door operator is worn and out of adjustment and the car doors do not fully close and the mechanical car door clutch "clips" or "strikes" the hoistway door unlocking rollers as the elevator operates.

Doc. 45 at 16 ¶ 2.3.

evidence, and as such, are inappropriate means to demonstrate a genuine issue of material fact."
*Id.* But Defendants misquote the Stabler Report. Paragraph 2.3 does not use the conditional
phrase "could have," but affirmatively states that the "failure to complete the hoistway door
safety circuit properly *will cause* the elevator to malfunction and stop...." Doc. 45 16 § 2.3.

Next, Defendants argue that paragraph 2.3 does not adequately establish causation
because opinions expressed in that paragraph are not plainly mentioned in section 6 of the report,
which lists Mr. Stabler's "General conclusions and opinions." To support this contention,
Defendants point to a sentence in paragraph 6.2. There, Mr. Stabler states, "I have concluded to
a reasonable degree of certainty, that the cause or causes of the aforementioned misleveling
incidents are set forth herein below." Doc. 43 at 34. Because none of the subsequent paragraphs
reference a potential interlock or power door malfunction, Defendants assert that the Stabler
Report does not properly put them on notice of Plaintiffs' theory of causation. But this argument
overlooks the sentence in Paragraph 6.1 that precedes paragraph 6.2. Paragraph 6.1 incorporates
into the general conclusions section all previous paragraphs, including paragraph 2.3. Doc. 45 at
27 ("Paragraphs 1.1 through 5.1 are incorporated herein.").

The structure of the Stabler Report further reinforces the opinions expressed within
section 2. The Stabler Report is divided into six parts: (1) Background, Evidence and Facts, (2)
the Elevator, (3) Building Codes and Elevator Safety Codes, (4) Industry Treatise, (5)
Definitions, (6) Conclusions and Opinions. Notably, section 2 is the only section to discuss
malfunctions in Elevator 2B. Four diagrams of all components relating to the interlock system
are also presented in this section. Doc. 45 at 18-19. But the importance of the interlock system is
emphasized in the other sections as well. Section 1, which contains a description of the
preventative maintenance agreement between Defendant Schindler and Defendant Tri Towers,

highlights "basic components" relating to the interlock system, including the shorting bar and the operating door. *See* Doc 45 at 15 (underlining "functional components of car and corridor operating stations, hangers and tracks, door operating devices, interlocks). In Section 3, which relays the relevant "Building Codes and Elevator Safety Codes," Mr. Stabler again underlines statements regarding hoistway door interlocks and leveling requirements. *See* Doc. 45 at 23-30.

The third alleged "new" opinion in the Supplemental Affidavit addresses the lighting during the incident. In giving possible reasons for that failure, the Supplemental Affidavit states that "elevator lighting may become compromised by the elevator jumping up and down as described by Ms. Lancaster" or that the lighting failure could indicate a problem with the elevator's electrical wiring, (Doc. 46 at 36 ¶ 9). Granted, these statements do not appear in the Stabler Report. But neither do these statements offer opinions about what caused the incident, nor recast Mr. Stabler's opinions about the incident. Rather, Mr. Stabler's statements about the lighting rebut an opinion in the Halpern Report that the operating door could not have malfunctioned because such a malfunction would not "cause the lights inside the elevator car to go pitch black." Doc 43 at 41.

Finally, Defendants argue that Plaintiffs tacitly admitted deficiencies in the report when they submitted the Supplemental Affidavit and suggested that Defendants could have deposed Mr. Stabler for further clarification about his opinions.[6] *See* Doc. 49 at 16 ("By suggesting that

_____

[6] Defendants also suggest that Plaintiffs wrongfully failed to "present" Mr. Stabler for a deposition when Plaintiffs did not respond to their request for dates and times when Mr. Stabler would be available. *See* Doc. 49 at 2. While cooperation among the parties in this regard is expected, it is not mandated. Nothing prevented Defendants from subpoenaing Mr. Stabler and exploring his opinions in more detail.

Defendants needed to depose Mr. Stabler to learn his opinions, Plaintiffs in essence agree that Mr. Stabler's Affidavit does not match his report and that he is offering new opinions that were not previously disclosed").   According to Defendants, because Mr. Stabler "never addresses [in the Stabler Report] how the elevator could fall several stories in the report," he replaced an assumption in the Stabler Report that the elevator fell, with a premise in the Supplemental Affidavit that the elevator did not fall but only made abrupt stops "to fit his theory about a cracked shorting bar." Doc. 49 at 3.  But Defendants do not point to any language in the Stabler Report that affirmatively asserts that the elevator dropped, nor do they indicate anything that suggests that the Stabler Report premised its findings about causation on "dropping."  The Stabler Report uses the term "dropping" only in the background section that details Ms. Lancaster's description of the August 22, 2017, incident.  *See* Doc. 45 at 14 ("That she told him [the man in front of the elevator] that the elevator had dropped[,] and she fell").[7]  Significantly, Defendants' expert Mr. Halpern includes similar language in his description of events.  *See* Doc. 43 at 39 ("It bounced, boom, boom, and dropped.  Up and down, up and down and dropped. And I dropped.").

Implicit in Defendants' Motion is an assumption that Plaintiffs must show that an elevator fall caused Ms. Lancaster's injuries.  But the question of causation is not centered on whether an elevator fell, rather the question is whether a negligent act by Defendants caused the

---

[7] There is one reference in Stabler's Report to an uncontrolled descent. In Section 6.9, the Stabler Reports states that "Defendants also failed to monitor elevator conditions and warn Towers Apartments personnel, guests, and tenants of potentially hazardous conditions which Elevator 2B may malfunction and descent uncontrolled and stop abruptly or cause or contribute to cause passengers to fall and become injured without notice or warning." Doc. 49 at 29. But this paragraph deals with a failure to warn and does not specifically state that the incident involved a drop.

elevator to malfunction and injure Ms. Lancaster.  It is uncontroverted that Ms. Lancaster

testified that Elevator 2B fell, bounced, and abruptly stopped.  Notably, Ms. Lancaster's

testimony appears to attribute her injuries to a stop, not a fall:

> Q.   Does it bounce up and down again before it comes up—comes to a stop?
> A:    Yes. It's bouncing up and down like its jerking. It's not stable. And when it comes
>       to a stop the second time, I was on the floor like that.

Doc. 43 at 161:22-25, 163:1.  Whether the elevator dropped three stories or did not drop at all is

not determinative of whether the elevator malfunctioned in some way that caused injury to Ms.

Lancaster.  To be sure, the issue of whether there was a fall may be material to a determination

about the trustworthiness of Ms. Lancaster's testimony.  At the summary judgment stage,

credibility is not the province of a judge.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255

(1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge, whether he is ruling on a

motion for summary judgment or for a directed verdict.").

   In an additional argument not thoroughly developed, Defendants submit that the evidence

suggests that no accident could have occurred because prior to August 22, 2017, there is no

causal link between assertions of "improper maintenance" and what occurred.  Doc. 51 at 10.

But the Stabler Report refers to another resident's "detailed account and description of the

elevator conditions and malfunction in building "B" that included Elevator 2B dropping."  Doc.

43 at 21 § 1.2.  In contrast, Defendants' expert asserts that in the five months prior to the event,

the callback records for the Tower Apartments do not show incidents involving dropping.  Doc.

43 at 40.  Yet, the Halpern Report also admits that in that same five months "the elevator had

several callbacks where the elevator was stuck, or the doors not operating properly."  Doc. 43 at

40. Whether the elevator had a history of falling or malfunctioning that put Defendants on notice of problems with Elevator 2B is also a material disputed factual issue.

Defendants' final objection focuses on Plaintiffs' introduction of the doctrine of res ipsa loquitur. Defendants argue that Plaintiffs' reliance on this doctrine improperly introduces a new legal theory. The doctrine of res ipsa loquitur is not a legal theory, but a rule of evidence through which a plaintiff may prove negligence by inference. *Mireles v. Broderick*, 872 P.2d 863 (N.M. 1994). The doctrine applies when ordinarily "an injury would not occur except by the negligence of the person in exclusive control and management of the injuring instrumentality." *Drake v. Trujillo*, 924 P.2d 1386, 1391 (N.M. Ct. App. 1996) (citing *Romero v. Truchas Mut. Domestic Water Consumer & Mut. Sewage Works Ass'n*, 908 P.2d 764, 767 (N.M. Ct. App. 1995). Defendants also contend that Plaintiffs have not established that there is a factual basis for this doctrine. "In determining whether to allow a plaintiff to proceed on a theory of res ipsa loquitur, the court must ask whether there are sufficient facts to support an inference that the injury was caused by the failure of the party in control to exercise due care." *Romero*, 908 P.2d at 768. Significantly, the Court has found that Plaintiffs have presented direct evidence of genuine issues of material fact regarding causation. But whether circumstantial evidence of causation also supports the Plaintiffs' use of the doctrine of res ipsa loquitur has not been fully briefed, and the Court will not consider the matter further at this time.

IV.  Conclusion

The Court finds that there are genuine issues of material fact about whether negligent acts or omissions on the part of Defendants caused Plaintiffs' alleged injuries.

14

IT IS THEREFORE ORDERED:

1.  Defendant Goodman Real Estate, Inc. d/b/a/ The Towers Apartments' ("Triad Towers") Motion for Summary Judgment (Doc. 42) is DENIED; and

2.  Defendant Schindler Elevator Corporation's Motion for Summary Judgment (Doc. 43) is DENIED.


_____
UNITED STATES DISTRICT JUDGE